# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| PABLO GOMEZ<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NORWALK, et al.<br>Defendants. | No. 3:15cv1434 (MPS) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

## I. Introduction

Pablo Gomez brings this suit against various officers of the Norwalk Police Department—Paul Wargo, William Matsen, Luis Serrano, and Chief Thomas E. Kulhawik—, along with the City of Norwalk. Gomez claims that officers Wargo, Matsen, and Serrano ("officer defendants") stopped him on false pretenses before using excessive force in arresting him. He makes the following claims: (i) deprivation of civil rights under 42 U.S.C. §1983 (count one); (ii) excessive force under 42 U.S.C. § 1983 (count two); (iii) unlawful search under 42 U.S.C. § 1983 (count three); (iv) "malicious abuse of process" under 42 U.S.C. § 1983 (count four); (v) municipal liability (count five); (vi) conspiracy to violate Gomez's civil rights (count six); (vii) assault and battery (count seven); (viii) negligent infliction of emotional distress (count eight); (ix) intentional infliction of emotional distress (count nine), and (x) negligence (only as to Chief Kulhawik and the City of Norwalk) (count ten).

The Court previously granted the defendants' motion to dismiss the following portions of Gomez's claims: (i) all of the claims against the officer defendants and Chief Kulhawik in their

1

official capacities in counts one, two, three, four, and six; (ii) the *Monell* claim against the City of Norwalk in count five;[1] and (iii) the negligence claim against the City of Norwalk and Chief Kulhawik in count ten. (ECF No. 46 at 1-2). Thus, the remaining claims are counts one through four, and six through nine. The defendants now move for summary judgment. (ECF No. 38). For the following reasons, the defendants' motion for summary judgment is hereby GRANTED IN PART AND DENIED IN PART.

## II. Factual Background

### a. Arrest of Gomez

The following facts are taken from the parties' Local Rule 56(a) Statements[2] and the exhibits. The defendants' account of events, which is disputed, is as follows. (*See* note 2,

---

[1] Given that the claims against the City of Norwalk in Gomez's remaining counts are redundant of those included in the previously dismissed *Monell* claim, (*see* ECF No. 34 ¶ 76 (advancing claims against the City for violations of Gomez's rights against excessive force, summary punishment, equal protection, and unreasonable searches and seizures)), the defendants' motion for summary judgment is granted with respect to all of Gomez's claims against the City.

[2] Gomez objects to nearly all of the defendants' statement of material facts on the basis that most of the facts contained therein are unsupported by a specific citation, as required by this Court's Local Rule 56. (ECF No. 44-1 at 1-12). After Gomez pointed this out in his opposition to the defendants' motion (*see* ECF No. 44 at 2-3), the defendants provided a "reference key" listing the citations for each statement of material fact in their reply brief. (*See* ECF No. 45-1 at 24-27). This late substitute for actual citations to the record is inadequate, as it deprives Gomez of an opportunity to respond to the defendants' factual averments and still requires the Court to piece together from multiple filings the specific facts the defendants are relying on. "Rule 56 of the Federal Rules of Civil Procedure 'does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.'" *Wilks v. Elizabeth Arden, Inc.*, 507 F. Supp. 2d 179, 184 (D. Conn. 2007) (quoting *Amnesty Am. V. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002)). Rather, the "purpose of [Local] Rule 56 is to aid the court, by directing it to the material facts that the movant claims are undisputed and that the party opposing the motion claims are disputed." *Coger v. Connecticut*, 309 F. Supp. 2d 274, 277 (D. Conn. 2004). When parties fail to comply with Local Rule 56, "the court is left to dig through a voluminous record, searching for material issues of fact without the aid of the parties." *Wilks*, 507 F. Supp. 2d at 185 (quoting *S.E.C. v. Global Telecom Servs., L.L.C.*, 325 F. Supp. 2d 94, 108 (D. Conn. 2004)) (some internal quotation marks omitted).

*supra*). In the early morning of October 1, 2013, Officer Wargo was on patrol in South Norwalk, Connecticut. (ECF No. 38-1, Defendant's Local Rule 56(a)1 Statement ("Def.'s L.R. 56(a)1 Stmt.") ¶ 1)). At that time Officer Wargo was in the area of Lexington Avenue near the intersection with Orlean Street, which he understood to be a "high crime area and 'open air drug market' known for both walk up and drive up narcotic transactions." (Def's L.R.56(a)1 Stmt. ¶ 2). He spotted "two males—one Black and the other Hispanic—standing at the intersection" and "covertly observed them and their activities." (Def's L.R.56(a)1 Stmt. ¶ 4). From his covert vantage point, Officer Wargo observed the males "come into contact with a number of people who either walked or drove up to them." (Def's L.R.56(a)1 Stmt. ¶ 5). After leaving to attend to another call, Officer Wargo returned to the intersection and saw the same "Hispanic Male" he had witnessed before (later identified as Gomez) now "conversing with another Hispanic Male" (later identified as Jeffrey Chanhom). (Def's L.R.56(a)1 Stmt. ¶¶ 6-7; Pl's Additional Material Facts ("Pl's AMF") ¶ 1). At this point, "[Officer Wargo] determined that given the totality of the circumstances there was a reasonable suspicion that the original Hispanic Male . . . was engaged in the sale or purchase of Narcotics." (Def's L.R.56(a)1 Stmt. ¶ 8).

Officer Wargo eventually parked his cruiser nearby, approached the individuals, and began to question them "regarding their presence in the area and their activities." (Def's

---

Although the local rules grant the Court the power to summarily deny a party's motion for summary judgment over a party's failure to comport with Local Rule 56(a), *see* D. Conn. L. Civ. R. 56(a)(3) ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court . . . imposing sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment. . . ."), I choose not to exercise this authority in the present case in light of the fact that the defendants at least attempted to remedy their mistake. Nonetheless, I will treat all of the defendants' statement of material facts as disputed. Since Gomez did not provide enough material facts in his opposition to sketch an adequate account of the incident underlying this case, however, I will list facts from the defendants' Rule 56 statement in the background section solely for the purposes of assisting the reader.

3

L.R.56(a)1 Stmt. ¶¶ 9-11; Pl's AMF ¶ 2). What happened next is sharply disputed. Officer Wargo claims that Gomez "was belligerent and abrasive," (Def's L.R.56(a)1 Stmt. ¶ 13), which led Wargo to order Gomez to "place his hands on the back trunk of [Chanhom's car] and to remain in that position." (Def's L.R. 56(a)1 Stmt. ¶ 16). Gomez denies this and avers instead that "Wargo grabbed [Gomez] and pushed him onto the trunk of [Chanhom's] car" shortly after asking Gomez for identification. (Pl.'s L.R. 56(a)2 Stmt. ¶ 16).

At this point, Wargo had Gomez's identification card ("I.D.") in his left hand and his flashlight in his right. (Def's L.R.56(a)1 Stmt. ¶¶ 24-25). He was holding the flashlight in an "overhand fashion (instead of a handshake manner)." (Def's L.R.56(a)1 Stmt. ¶ 27). Officer Wargo claims that at this point, "Gomez removed his left hand from the trunk of [Chanhom's] car, and swung it toward [Wargo]." (Def's L.R. 56(a)1 Stmt. ¶ 28). Gomez denies this account and claims that he "lifted his arm from the trunk of the car and looked over his left shoulder at Wargo to see what he was doing," being careful to avoid "making any sudden movements." (Pl.'s L.R. 56(a)2 Stmt. ¶ 28). While Officer Wargo claims that he "guided Gomez back onto the trunk of [Chanhom's car] with his left hand," (Def's L.R. 56(a)1 Stmt. ¶ 29), Gomez claims that he "tried to slam [Gomez's] head and upper body onto the trunk several times with enough force to generate a 'loud thump.'" (Pl.'s L.R. 56(a)2 Stmt. ¶ 29). Officer Wargo claims that at this point, "Gomez suddenly and without prior warning began to throw his right arm, elbow or shoulder back at Wargo causing him to push Gomez back toward the surface of the trunk"; in so doing, "the flashlight that was being held by Wargo in his right hand accidentally came into contact with [Gomez's] scalp causing a 3 [centimeter] cut in his scalp." (Def.'s L.R. 56(a)1 Stmt. ¶¶ 28-30). Gomez claims that Officer Wargo intentionally "struck [him] on the head with a flashlight" immediately "[a]fter slamming [him] onto the trunk of the car." (Pl.'s L.R. 56(a)2

4

Stmt. ¶¶ 30, 32). He also claims that Officer Wargo placed Gomez's wallet "on the trunk of Chanhom's car to free his hand and then grabbed his flashlight" to strike the plaintiff. (Pl's AMF ¶ 7.).

Officers Matsen and Serrano arrived around the time of the incident. As the events leading up to the incident occurred, "Officer Matsen was in the general vicinity of where Wargo was questioning Gomez and [Chanhom]." (Def's L.R.56(a)1 Stmt. ¶ 33). Officer Matsen arrived upon the scene to find Officer Wargo conducting said questioning. (Def's L.R.56(a)1 Stmt. ¶¶ 35-36; Pl's AMF ¶¶ 7-8). The defendants claim that he stood near Chanhom, who was standing "toward the rear of his vehicle on the drivers' side." (Def's L.R.56(a)1 Stmt. ¶ 39). "Gomez was at the rear of [Chanhom's vehicle] and to the opposite side of the car—the rear passenger's side near the trunk." (Def's L.R.56(a)1 Stmt. ¶ 40). The parties disagree about whether Officer Matsen was within arm's length of Gomez when he was struck by the flashlight; Gomez states that Officer Matsen was "probably" within "arm's length" of him at the time while the defendants claim he was not. (Def's L.R.56(a)1 Stmt. ¶ 41). Officer Serrano had also arrived on the scene by the time Gomez was struck with the flashlight. (Def's L.R.56(a)1 Stmt. ¶¶ 51-53). The defendants claim that he observed the incident at a distance, however, and was not "in a position to prevent the incident from occurring." (Def's L.R.56(a)1 Stmt. ¶¶ 54-55).

Emergency Medical Personnel arrived at the scene after Gomez was struck and examined him. (Def's L.R.56(a)1 Stmt. ¶ 57). Their medical report noted their impression that "Gomez smelled of alcohol and [that he] had admitted to using alcohol that evening." (Def's L.R.56(a)1 Stmt. ¶ 58). Eventually, "Serrano assisted Matsen in transporting Gomez to the Norwalk Hospital." (Def's L.R.56(a)1 Stmt. ¶ 63). Gomez was "uncooperative" and "angry" at this point. (Def's L.R.56(a)1 Stmt. ¶ 66). He was ultimately "arrested and charged with 'Use of

Highways by Pedestrian' (in violation of [Conn. Gen. Stat. § 53-182]), Interfering with an Officer (in violation of [Conn. Gen. Stat. § 53a-167a]), and Breach of Peace 2nd (in violation of [Conn. Gen. Stat. § 53a-181]). He later [pleaded guilty] to Breach of Peace. . . ." (Def's L.R.56(a)1 Stmt. ¶ 67).

Gomez later filed a civilian complaint with the Norwalk Police Department. (ECF No. 38-1 at 51). The complaint was eventually sent to Chief Kulhawik, who ordered Lieutenant Paul Vinett to conduct an internal investigation into the matter. (*Id.* at 56). Two months later, Lieutenant Vinett provided a report to Chief Kulhawik setting forth his finding that Officer Wargo "did not commit any acts which constitute a violation of the rules and regulations of the Norwalk Police Department of Police Service Manual and Directives." (*Id.* at 58). In particular, he concluded that "Officer Wargo had no intention to cause injury during the detention and subsequent arrest," and that he had "responded quickly to an aggressive action committed by [Gomez] and appear[ed to have] used reasonable force to bring the incident under control." (*Id.*). Chief Kulhawik reviewed Vinnett's findings and concurred with them; he then sent a letter to Gomez notifying him of the outcome of the investigation. (*Id.* at 63-64).

**b. Gomez's Complaint**

Gomez alleged in his complaint that Officer Wargo struck him after he asked why he was being stopped. (ECF No. 34 ¶ 33). He claimed that "[a]fter striking the Plaintiff in the head with the flashlight, [Officers Wargo and Matsen] proceeded to push him onto the car and handcuff him." (*Id.* ¶ 34). He averred that as he was "bleeding profusely onto the vehicle trunk after his head was smashed open by the force of [Officer Wargo's] flashlight, . . . he became visibly upset, prompting [Officers Wargo and Matsen] to restrain, push and grab [him] after he was already injured." (*Id.* ¶ 35). The complaint also alleged that Officer Serrano "assisted [Officers

6

Wargo and Matsen] in physically restraining [Gomez] after he was [struck] and injured." (*Id.* ¶ 36). The criminal charges against Gomez, according to his complaint, were filed "in an effort to provide a basis and/or explanation for why unlawful force was used upon [him]." (*Id.* ¶ 42). Gomez also alleged that the Officers colluded in fabricating their written reports of the incident "in an effort to conceal unlawful activity in which said Defendants were involved, to wit, in an illegal stop, search and/or seizure, and the use of excessive force upon the Plaintiff." (*Id.* ¶ 43). This fabrication was aided, according to Gomez, by the knowing assistance of Chief Kulhawik. (*Id.* ¶ 79). Finally, Gomez stated that he suffered severe injuries from the incident, ranging from mental side effects such as post-traumatic stress and anxiety to ongoing physical symptoms such as headaches and blurred vision. (*Id.* ¶ 44).

## III. Standard of Review

Summary judgment is appropriate only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). The moving party bears the burden "of showing that no genuine factual dispute exists . . ., and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences" in favor of the non-moving party. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995).

## IV. Discussion

### a. Excessive Force Claims Under 42 U.S.C. § 1983 (Count Two)

#### 1. Excessive Force Claims Against Officer Wargo

While the Fourth Amendment "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," such force exceeds the constitutionally permissible degree if it is "objectively [un]reasonable in light of the facts and circumstances confronting the [officers making the arrest], without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Determining the "reasonableness" of a particular use of force "requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (numerations added). The events "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "In sum, the 'standard' to be applied in determining whether 'the amount of force' used exceeded the amount that was 'necessary' in the particular circumstances is 'reasonableness at the moment.'" *Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 396-97).

The dueling accounts of the flashlight incident presented by the parties demonstrate a genuine issue of material fact concerning whether Officer Wargo used excessive force against Gomez under the *Graham* standard. As for the first *Graham* factor, Gomez pleaded guilty to breach of the peace in the second degree, a Class B misdemeanor under Connecticut law. (*See* (Def's L.R.56(a)1 Stmt. ¶ 67; Pl.'s L.R. 56(a)2 Stmt. ¶ 67); Conn. Gen. Stat. § 53a-181). That offense carries with it a sentence of up to six months imprisonment, *see* Conn. Gen. Stat. § 53a-26(d) ("A sentence of imprisonment for a misdemeanor shall be a definite sentence and, unless the section of the general statutes that defines or provides the penalty for the crime specifically provides otherwise, the term shall be fixed as follows: . . . "for a class B misdemeanor, a term not

to exceed six months. . . ."). The "severity of the crime at issue" factor presents a thin reed for the defendants given that neither the facts underlying Gomez's conviction—i.e., that Gomez was drunk and belligerent—nor the crime of which he was convicted were severe in nature. *See Brown v. City of New York*, 798 F.3d 94, 102 (2d Cir. 2015) ("In this case, the severity of the crime is unquestionably slight. The disorderly conduct offense is subject to a maximum penalty of fifteen days in jail, and the underlying facts, even as alleged by the officers, are loud banging on the door of a closed store by someone wanting to use a bathroom, plus the use of loud and nasty language.").

Whether Gomez presented an "immediate threat to the safety of the officers or others" or was "actively resisting or attempting to evade arrest by flight" is a contested issue. The parties' accounts of the incident at hand differ in ways that forestall the grant of summary judgment. *See McClellan v. Smith*, 439 F.3d 137, 148 (2d Cir.2006) ("Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment.") (internal quotation marks omitted). The defendants contend that Gomez "suddenly and without prior warning began to throw his right arm, elbow or shoulder back at [Officer] Wargo causing him to push Gomez back toward the surface of the trunk," thereby causing Officer Wargo's flashlight to accidentally come into contact with Gomez's head. ((Def.'s L.R. 56(a)1 Stmt. ¶ 30-32). Hence, the defendants aver that Officer Wargo reacted in real time to combat an aggressive sudden movement by Gomez.

Gomez recounts a different tale. He claims that before Officer Wargo hit him with the flashlight, he had "lifted his arm from the trunk of [Chanhom's car] and looked over his left shoulder at [Officer Wargo] to see what he was doing," being careful to "avoid[] making any sudden movements." (Pl.'s L.R. 56(a)2 Stmt. ¶¶ 30). In response to this cautious movement,

Gomez avers, Officer Wargo slammed him onto the trunk of the car and then "intentionally struck [him] on the head with a flashlight." (Pl.'s L.R. 56(a)2 Stmt. ¶ 32). Chanhom stated in his affidavit that he saw Officer Wargo "put[] [Gomez's] wallet on the trunk of [Chanhom's] car to free his hand and then grab[] his flashlight and strike [Gomez] one time on his head." (*See* ECF No. 44-2, Exhibit 1, Affidavit of Jeffrey Chanhom ("Chanhom Aff.") ¶¶ 7-8). Thus, Gomez alleges that Officer Wargo not only overreacted to his innocently taking his hand off the trunk of Chanhom's car but also that Officer Wargo hit him with the flashlight *after* subduing him and *after* putting his wallet down. This account leaves little doubt as to the necessity or intentionality of Officer Wargo's actions. Given this dispute, the merits of Gomez's excessive force claim against Officer Wargo "'turns on which of two conflicting stories best captures what happened on the street,' making summary judgment inappropriate." *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 763 (2d Cir. 2003) (quoting *Saucier v. Katz*, 533 U.S. 194, 216 (2001) (Ginsburg, J., concurring in the judgment)) (internal citation omitted).

The defendants' invocation of the doctrine of qualified immunity does not change this conclusion. "The doctrine of '[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" *Rogoz*, 796 F.3d at 247 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Officials are "entitled to qualified immunity [when] their decision was reasonable, even if mistaken; the doctrine gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. . . ." *Id.* (internal quotation marks and citations omitted). "[W]hen a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the

plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). The defendants argue that it was not "'clearly established' to the officers that when Officer Wargo used his right hand to control Gomez and when his flashlight accidentally struck Gomez that this would constitute [an] unreasonable use of force." (ECF No. 38 at 24). This statement is, of course, true, but it relies on the defendants' version of events. It thus has no bearing on the matter at issue here, which is whether the evidence, *viewed in the light most favorable to the plaintiff*, shows a violation of a clearly established right. And the evidence plainly does make such a showing. Had Officer Wargo *intentionally* struck Gomez with his flashlight after slamming him into the trunk of Chanhom's car, he would have violated Gomez's clearly established constitutional rights—or at the very least, a reasonable jury could so find. Thus, the question of qualified immunity folds into the overall factual dispute between the parties, thereby negating the possibility of summary judgment. *See Rogoz*, 796 F.3d at 250 (defendants not entitled to summary judgment on ground of qualified immunity on basis of disputed record).

I therefore deny the defendants' motion for summary judgment with respect to Gomez's excessive force claim against Officer Wargo.

### 2. Excessive Force Claims Against Officer Serrano and Officer Matsen

The defendants also seek summary judgment with respect to the excessive force claims against Officer Serrano and Officer Matsen. (ECF No. 38 at 10-11). "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [ 42 U.S.C. §1983]." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). An officer is "personally involved in the use of excessive force if he either:

(1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Gonzales v. Waterbury Police Dept.*, 199 F. Supp. 3d 616, 621 (D. Conn. 2016) (quoting *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003)). With regard to the latter category, an officer is liable for failing to intercede when he or she "observes or has reason to know . . . that excessive force is being used" and has "a realistic opportunity to intervene to prevent the harm from occurring." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.*

The defendants contend that Officer Matsen and Officer Serrano were not in a position to intercede when Officer Wargo struck Gomez with his flashlight. (ECF No. 38 at 7-9). This contention goes undisputed with respect to Officer Serrano. Gomez does not argue in his opposition that Officer Serrano was in a position to prevent Officer Wargo from striking him, thereby waiving the argument. *See* D. Conn. L. Civ. R. 56(a)(1) ("A party shall be deemed to have waived any argument in support of an objection that such party does not include in its memorandum of law."). A review of the summary judgment record does not present any evidence to the contrary.[3] Rather, each piece of evidence suggests that Officer Serrano was

---

[3] Although Gomez stated in his complaint that "[u]pon information and belief officer [Serrano] assisted [Officer Wargo and Officer Matsen] in physically restraining the Plaintiff after he was struck and injured," he does not present any evidence in support of this contention in his opposition to the defendants' motion for summary judgment. He has thus effectively conceded that summary judgment should enter in favor of Officer Serrano on the excessive force claim. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) ("When [a motion for summary judgment] is made, we go beyond the paper allegations of the pleadings, which were enough to survive the common law demurrer. The time has come, as James and Hazard put it, 'to put up or shut up.'").

standing some ways away from Gomez and Officer Wargo at the time of the incident. (*See* ECF No. 38-1 at 41-42, Affidavit of Officer Luis Serrano (Serrano Aff.) ¶¶ 6-8 (averring that Serrano only "observed the motions and movements that led to the accidental injury to [ Gomez] from a distance" and that he was never in a position to intervene); ECF No. 44-4, Exhibit 3, Deposition of Pablo Gomez (Gomez Depo.) at 180, 192 (noting that Gomez only saw Officers Matsen and Wargo on the scene prior to being struck and that he did not know where Officer Serrano was at the time). Thus, the excessive force claim against Officer Serrano fails as a matter of law.

Officer Matsen presents a more complicated matter. In his opposition to the motion for summary judgment, Gomez contends that the evidence, viewed in the light most favorable to him, indicates that Matsen could have intervened to prevent Officer Wargo from striking him or at least instructed Officer Wargo to stop after seeing him slam Gomez "onto the trunk of the car more than once. . . ." (ECF No. 44 at 8). There is little evidence in the summary judgment record that Officer Matsen could have intervened with respect to the flashlight incident. When Gomez was asked at his deposition whether Matsen was "within arm's length of [him] at the time of the strike," he responded: "Arm's length, probably. Maybe not. I mean, I don't—I don't really recall how far he was." (Gomez. Depo. at 194). He also drew a diagram of the scene at the time of the incident depicting Officer Matsen as standing with Chanhom on the other side of the rear of the vehicle where Gomez was situated. (ECF No. 38-1, Exhibit E). Officer Matsen stated in his affidavit that he "was not within arm's length of Gomez" at the time of the incident and that he was never in a position to stop Wargo from striking Gomez with the flashlight. (ECF No. 38-1 at 35-37, Affidavit of Officer William Matsen (Matsen Aff.) ¶¶ 11, 19).

Gomez's claim that Officer Wargo slammed him into the trunk of the car repeatedly while Officer Matsen did nothing is more fruitful. Gomez did not allege that Officer Wargo repeatedly slammed him onto the trunk of the car in his complaint (*see* ECF No. 34 ¶¶ 23-44), nor did he mention such an occurrence during his deposition. (*See* Gomez Depo. at 145-148). Instead, he relies upon affidavits provided by Chanhom and his girlfriend, Kristie Reda—who was seated in Chanhom's car at the time of the incident—, reporting that Officer Wargo pushed Gomez onto the trunk of the car several times. (*See* Chanhom Aff. ¶¶ 7-8; ECF No. 44-2, Exhibit 2, Affidavit of Kristie Reda ("Reda Aff.") ¶ 6). I conclude that these affidavits create a genuine issue of material fact regarding whether Officer Matsen could have interceded. If Officer Matsen did witness Officer Wargo slamming Gomez repeatedly into the trunk of the car before striking him with the flashlight, then a jury could reasonably find him liable for failing to intercede. *See Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) ("When considering whether an officer had a realistic opportunity to intercede, a court should consider whether the officer witnessed prior unconstitutional conduct that would alert him to a likelihood of further unconstitutional conduct."). Thus, Gomez has presented a genuine issue of material fact concerning whether Matsen had an ability to intercede on his behalf.[4]

---

[4] The defendants also aver that Officer Matsen is entitled to qualified immunity because he "could not be held to foresee that Gomez would continuously disobey the lawful instruction[s] that were being given to him and could not have forecast that [he] would have to jump in at a precise second when the situation rapidly unfolded." (ECF No. 38 at 24). This argument fails for similar reasons as the defendants' qualified immunity contention regarding Officer Wargo— it relies upon a view of a disputed record in the light most favorable to the defendants. Such a view is contrary to the posture appropriate for a summary judgment proceeding. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) ("In [determining whether summary judgment is appropriate], a court must view the evidence in the light most favorable to the opposing party.").

I therefore deny the defendants' motion for summary judgment with respect to the excessive force claim against Officer Matsen, but grant the motion with respect to the claim against Officer Serrano.[5]

### b. Conspiracy to Violate Gomez's Civil Rights (Count Six)

To prove a conspiracy to violate civil rights under 42 U.S.C. § 1983, "a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Such a claim must be supported by more than "conclusory, vague, or general allegations" against the defendants—"diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (internal quotation marks omitted). Gomez claims that the defendants conspired against him by tampering with evidence, intimidating witnesses, and deliberately botching the investigation into the conduct of the officer defendants. (ECF No. 34 ¶ 82). He claims specifically that Chief

---

[5] Although the defendants nominally moved for summary judgment with respect to all claims in Gomez's complaint, (ECF No. 38 at 1), they did not provide any argument as to why they are entitled to summary judgment with respect to a significant portion of the claims in the complaint. One of the claims that the defendants ignored was the excessive force claims against Chief Thomas E. Kulhawik in his individual capacity. Since the defendants did not present any reasoning with respect to this claim, they are not entitled to summary judgment on it. *See Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.").

Other claims that the defendants ignored in their brief in support of summary judgment include: (i) the unlawful search under 42 U.S.C. § 1983 claim; (ii) the malicious abuse of process under 42 U.S.C. § 1983 claim; (iii) all of the claims under Gomez's first count save for the excessive force claim; and (iv) all other claims against Chief Kulhawik in his individual capacity save for the conspiracy to violate civil rights claim under 42 U.S.C. § 1983. The defendants' motion for summary judgment is denied with respect to all of these claims.

Kulhawik "failed to properly investigate the matter of [Gomez's] treatment, and relied upon false reports by officers involved, and those commissioned to investigate on behalf of the chief," and that the Officer Defendants conspired amongst themselves to "cause the arrest, prosecution and detention of [Gomez]." (*Id.* ¶¶ 79-80). All of this, according to Gomez, led to a deprivation of his constitutional rights by "directly and proximately caus[ing] [Gomez's] arrest, detention, and deprivation of liberty." (*Id.* ¶ 84).

Despite these allegations, Gomez fails to present "a scintilla of evidence regarding the existence, or even inference, of any specific agreement to violate his rights, whether such an agreement was entered into, the nature of the agreement, or specific acts in furtherance of the agreement." *Kramer v. City of New York*, No. 04 CIV.106 HB, 2004 WL 2429811, at *7 (S.D.N.Y. Nov. 1, 2004) (dismissing plaintiff's conspiracy claim). He does not provide any "details of time and place," or the "factual basis necessary to enable [the defendants] intelligently to prepare their defense." *Ciambriello*, 292 F.3d at 325 (internal citation and quotation marks omitted). Indeed, Gomez's only allegation setting out an act taken in furtherance of this conspiracy is that Chief Kulhawik failed to properly investigate the matter.

The summary judgment record does not contain any indication that Chief Kulhawik engaged in any sort of nefarious maneuvers in conducting his investigation into the incident between Gomez and Officer Wargo. Rather, the evidence contained in the summary judgment record demonstrates that Chief Kulhawik conducted a lengthy investigation of the incident in response to a complaint form filed by Gomez. (*See* ECF No. 38-1 at 54 (letter from Deputy Chief David P. Wrinn to Chief Kulhawik passing along Gomez's complaint and recommending "that further investigation be done into the incident to clarify the extent of the injuries and if any operating procedures were violated"), 56 (response from Chief Kulhawik instructing Lieutenant

Paul Vinett "to conduct an Internal Investigation into [the incident with Gomez] to determine if there were any violations of rules, regulations or laws"), 58 (report from Lieutenant Vinett to Chief Kulhawik reporting his findings that no rules or regulations were violated), 63-64 (letter from Chief Kulhawik to Gomez informing him of the results of the internal investigation)). Thus, we are left with Gomez's unsupported allegations that the defendants engaged in a conspiracy that resulted in his arrest and subsequent detention. This is not enough to survive summary judgment. *See Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003). ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact.").

I therefore grant the defendants' motion for summary judgment with respect to Gomez's sixth count.

    **c.    Assault and Battery (Count Seven)**

Gomez also alleges a claim of assault and battery against the officer defendants based on Officer Wargo's actions. (ECF No. 34 ¶¶ 56-58). "To establish a claim for assault and battery, [a] plaintiff must prove that defendants applied force or violence to [him] and that the application of force or violence was unlawful." *Conroy v. Caron*, No. 3:14-CV-01180 (JAM), 2017 WL 3401250, at *18 (D. Conn. Aug. 8, 2017) (quoting *Odom v. Matteo*, 772 F.Supp.2d 377 (D. Conn. 2011)). In cases where "genuine issues of act preclude summary judgment on [a plaintiff's] excessive force claim, summary judgment on the common law claim for assault and battery generally must also be denied." *Greene v. City of Norwalk*, No. 3:14-CV-1016 (VLB), 2017 WL 1086174, at *10 (D. Conn. Mar. 21, 2017); *see also Betancourt v. Slavin*, 676 F. Supp. 2d 71, 80 (D. Conn. 2009) ("Because the Court has found that a genuine issue of material fact

exists as to plaintiff's claim of excessive force, it necessarily follows that questions arise as to the reasonableness of defendants' use of physical force pursuant to state law.").

Given my conclusion regarding Gomez's excessive force claims, there is a genuine issue of material fact with respect to the assault and battery claim against Officer Wargo. Officer Matsen presents a closer question, as Gomez's allegations against him principally concern his failure to intercede. Since Gomez does not contend in his opposition to the defendants' motion for summary judgment that Officer Matsen used force or directed that force be used against him at any point, however, the assault and battery claim against him must be dismissed. *See Jones v. City of Hartford*, 285 F. Supp. 2d 174, 189 (D. Conn. 2003) (dismissing assault and battery claim against some defendants due to their lack of physical contact with or encouragement of said contact with the plaintiff); *Contrast Greene*, 2017 WL 1086174 at *10 (upholding assault and battery claims against officers on basis that "each made what a reasonable jury could conclude was a harmful or offensive contact with the Plaintiff"). Finally, the claim must also be dismissed with respect to Officer Serrano for the reasons set forth above with respect to the excessive force claim.

I therefore deny the defendants' motion for summary judgment with respect to Gomez's assault and battery claim as to Officer Wargo, but grant it as to the other officer defendants.

### d. Negligent Infliction of Emotional Distress (Count Eight) and Intentional Infliction of Emotional Distress (Count Nine)

To set out a claim of negligent infliction of emotional distress, a plaintiff must show that:"(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the

plaintiff's distress." *Conroy v. Caron*, No. 3:14-CV-01180 (JAM), 2017 WL 3401250, at *18 (D. Conn. Aug. 8, 2017) (quoting *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003)). To make a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000). The defendants' sole argument in support of their motion for summary judgment on these counts avers that Gomez may not rely upon a negligent infliction of emotional distress claim in addition to an intentional infliction of emotional distress claim. (ECF No. 38 at 18).

Because the Federal Rules afford the right to plead alternative and even inconsistent theories, *see* Fed. R. Civ. P. 8(d)(3) ("[a] party may state as many separate claims or defenses as it has, regardless of consistency"), I have concluded that a party may bring both a negligence claim and a claim of intentional conduct based on the same incident. *Olschafskie v. Town of Enfield*, No. 3:15-CV-67 (MPS), 2017 WL 4286374, at *8 (D. Conn. Sept. 27, 2017) (denying summary judgment on negligent infliction of emotional distress claim solely on basis that plaintiff had also brought intentional infliction of emotional distress claim); *see also Bussolari v. City of Hartford*, No. 3:14–cv–00149 (JAM), 2016 WL 4272419, at *4 (D. Conn. Aug. 12, 2016) (same). I thus conclude that Gomez may simultaneously bring his negligent infliction of

19

emotional distress and intentional infliction of emotional distress claim.[6] *See Bussolari*, 2016 WL 4272419, at *4.

## V. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (ECF No. 38) is GRANTED IN PART AND DENIED IN PART. The defendants' motion is granted with respect to the excessive force and assault and battery claims against Officer Serrano, the assault and battery claim against Officer Matsen, the conspiracy to violate civil rights claim, and all claims against the City of Norwalk. It is denied with respect to all of the plaintiff's other claims.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            February 8, 2018

---

[6] The parties' Joint Trial Memorandum, which must conform with the directions on the portion of the Court's website devoted to my Orders and Instructions, shall be filed by March 26, 2018. If the parties wish to mediate this case with a magistrate judge, they shall file, within fourteen days, the joint statement described under "Settlement" on the portion of the Court's website describing my "Pretrial Preferences." If the parties file such a statement within fourteen days, the Court will refer the case to Magistrate Judge Martinez for a settlement conference and will extend the deadline for filing the Joint Trial Memorandum until forty-five days after the unsuccessful conclusion of the mediation.